**No. 26-1783**

---

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

---

Count US IN, *et al.*,
*Plaintiffs-Appellees*,

v.

Diego Morales, in his official capacity as Indiana Secretary of State, *et al.*,
*Defendants-Appellants*.

---

On Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division
No. 1:25-cv-864-RLY-MKK
The Honorable Judge Richard L. Young

---

**PLAINTIFFS-APPELLEES' RESPONSE IN OPPOSITION TO DEFENDANTS-
APPELLANTS' EMERGENCY MOTION FOR IMMEDIATE ADMINISTRATIVE
STAY AND STAY PENDING APPEAL**

---

Jeffrey A. Macey
MACEY SWANSON LLP
429 N. Pennsylvania Street
Ste 204
Indianapolis, IN 46204
jmacey@maceylaw.com
(317) 637-2345

Aria C. Branch
  *Counsel of Record*
Katherine Chamblee-Ryan
Max C. Accardi
Derek A. Zeigler
ELIAS LAW GROUP LLP
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
(202) 968-4490
abranch@elias.law

*Attorneys for Plaintiffs-Appellees*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

ARGUMENT .................................................................................................................. 4

    I.    Movants do not adequately excuse their failure to seek relief in the district court ................................................................................................................. 4

    II.    The injunction was consistent with *Purcell*. .................................................. 5

    III.    Movants fail to demonstrate a strong likelihood of success on the merits ...................... 9

        A.    The Ban imposes a significant burden on the right to vote ................................. 10

        B.    The district court did not clearly err in rejecting Movants' putative state interests. .................................................................................................. 12

        C.    The scope of the district court's injunction was proper. ...................................... 13

    IV.    Movants suffer no cognizable injury, much less an irreparable one, from the district court's injunction. ............................................................................ 15

    V.    The remaining equitable factors favor preserving the district court's injunction. ........ 15

CONCLUSION ............................................................................................................... 16

**TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Page(s)**

*Am. Council of Blind of Ind. v. Ind. Election Comm'n*,
    No. 1:20-CV-03118-JMS-MJD, 2022 WL 702257 (S.D. Ind. Mar. 9, 2022) ................... 6

*Anderson v. Celebrezze*,
    460 U.S. 780 (1983) ................................................................................................ 10, 11

*BABE VOTE v. McGrane*,
    546 P.3d 694 (Idaho 2024) ............................................................................................ 10

*Burdick v. Takushi*,
    504 U.S. 428 (1992) ........................................................................................................ 9

*Castañon-Nava v. U.S. Dep't of Homeland Sec.*,
    161 F.4th 1048 (7th Cir. 2025) .................................................................................. 4, 15

*Chem. Weapons Working Grp. (CWWG) v. Dep't of the Army*,
    101 F.3d 1360 (10th Cir. 1996) ...................................................................................... 5

*Cole v. Comm'r*,
    637 F.3d 767 (7th Cir. 2011) .......................................................................................... 9

*Crawford v. Marion Cnty. Election Bd.*,
    553 U.S. 181 (2008) .................................................................................................. 10, 11

*Crawford v. Marion Cnty. Election Bd.*,
    472 F.3d 949 (7th Cir. 2007) ........................................................................................ 13

*Common Cause Ind. v. Lawson*,
    937 F.3d 944 (7th Cir. 2019) ........................................................................................ 13

*Common Cause R.I. v. Gorbea*,
    970 F.3d 11 (1st Cir. 2020) ............................................................................................. 8

*DM Trans, LLC v. Scott*,
    38 F.4th 608 (7th Cir. 2022) ........................................................................................... 9

*EMW Women's Surgical Ctr., P.S.C. v. Beshear*,
    No. 17-6151, 2017 WL 11920191 (6th Cir. Dec. 8, 2017) ......................................... 4, 5

*Estrada-Martinez v. Lynch*,
    809 F.3d 886 (7th Cir. 2015) .......................................................................................... 2

*Gazzola v. Hochul*,
No. 22-3068, 2022 WL 18401354 (2d Cir. Dec. 21, 2022) ................................................ 5

*Gill v. Scholz*,
962 F.3d 360 (7th Cir. 2020) ....................................................................................... 12

*Graphic Commc'ns Union v. Chi. Trib. Co.*,
779 F.2d 13 (7th Cir. 1985) ....................................................................................... 4, 9

*Gray v. Sanders*,
372 U.S. 368 (1963)..................................................................................................... 14

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982)..................................................................................................... 13

*Ind. State Conf. of the NAACP v. Lawson*,
326 F. Supp. 3d 646 (S.D. Ind. 2018)......................................................................... 16

*Jack. Branch of NAACP v. City of Jacksonville*,
No. 22-13544, 2022 WL 16754389 (11th Cir. Nov. 7, 2022) ...................................... 8

*Joelner v. Village of Washington Park*,
378 F.3d 613 (7th Cir. 2004) ...................................................................................... 15

*Kim v. Hanlon*,
99 F.4th 140 (3d Cir. 2024) .......................................................................................... 6

*League of United Latin Am. Citizens v. Exec. Off. of President*,
808 F. Supp. 3d 29 (D.D.C. 2025)................................................................................ 14

*March for Our Lives Idaho v. McGrane*,
749 F. Supp. 3d 1128 (D. Idaho 2024) ....................................................................... 10

*Merrill v. Milligan*,
142 S. Ct. 879 (2022)..................................................................................................... 6

*Nash. Student Org. Comm. v. Hargett*,
155 F. Supp. 3d 749 (M.D. Tenn. 2015)...................................................................... 10

*Nken v. Holder*,
556 U.S. 418 (2009)................................................................................................. 4, 14

*Obama for Am. v. Husted*,
697 F.3d 423 (6th Cir. 2012) ................................................................................. 15, 16

*One Wis. Inst., Inc. v. Nichol*,
186 F. Supp. 3d 958 (W.D. Wis. 2016) ....................................................................... 14

*Proft v. Raoul*,
    944 F.3d 686 (7th Cir. 2019) ............................................................... 4

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006) .................................................................. 5, 6, 8, 16

*Reps. Comm. for Freedom of the Press v. Rokita*,
    147 F.4th 720 (7th Cir. 2025) ............................................................ 14

*Rose v. Raffensberger*,
    143 S. Ct. 58 (2022) ........................................................................... 8

*Slaney v. The Int'l Amateur Athletic Fed'n*,
    244 F.3d 580 (7th Cir. 2001) ............................................................ 13

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025) .......................................................................... 13

*UAW v. Brock*,
    477 U.S. 274 (1986) .......................................................................... 14

*United Food & Com. Workers v. Brown Grp., Inc.*,
    517 U.S. 544 (1996) .......................................................................... 14

*United States v. Acox*,
    595 F.3d 729 (7th Cir. 2010) .............................................................. 7

*Whole Woman's Health v. Paxton*,
    972 F.3d 649 (5th Cir. 2020) .............................................................. 5

iv

**INTRODUCTION**

Since Indiana first enacted its voter ID law nearly 20 years ago, student IDs from many public universities were accepted as voter ID, together with all other IDs that met the law's neutral criteria. Over those 20 years, there was no evidence whatsoever that this posed any threat to Indiana's elections. Indiana simply treated student IDs the way it treated other IDs that met the same criteria, enabling tens of thousands of young Hoosiers to vote. Then, last year, Indiana passed the Student ID Ban, which surgically excludes student ID—and only student ID—from Indiana's voter ID law, threatening Plaintiffs' and other Indiana voters' fundamental rights. *See* Apr. 16, 2026 Emergency Motion of Appellants ("Mot."). The district court properly enjoined the Ban; Movants now ask this Court to stay that injunction. Their Motion should be denied.

*First*, Movants' request is procedurally improper. Rule 8 required them to first seek a stay from the district court. They did not do so, and offer no adequate excuse for this omission. *Second*, Movants' principal argument—that the injunction will throw the primary election into chaos—is based on extra-record evidence that was never presented to the district court and is not credible. The injunction merely requires election officials to accept a form of ID they have accepted for the past two decades. Election officials have already implemented the ruling and are accepting student IDs at the polls. On April 15—the day after the injunction was issued—the Indiana Election Division was able to easily implement the injunction by issuing the straightforward instruction to county clerks that qualifying student IDs "may be used for voting in upcoming elections, including the May 5, 2026, primary election." Exs. A, B, C. And, as Movants note, Plaintiff Josh Montagne voted in the primary using his student ID that very same day. *See* Mot.17 (citing Movants' Ex. B). This not only demonstrates ease of implementation, but belies Movants' puzzling contention that "[v]oter confusion and public confidence in the elections is at risk." Mot.7. In reality, staying the

1

order will *cause* voter confusion, not the reverse. *Finally*, Movants fail to make any of the other showings necessary to justify a stay, including that they would be irreparably harmed without one. And although they criticize the district court's detailed factual analysis, they ignore the deferential "clear error" standard of review.

## BACKGROUND

Indiana law requires voters to present proof of identification to vote. Op.2.[1] Before 2025, any form of identification sufficed so long as it was issued by the U.S. or Indiana government and met several neutral criteria, like bearing an expiration date. Op.2. Many public university student ID cards met these criteria, and during the nearly 20 ensuing years, "hundreds of thousands of students… used their student ID cards to vote." Op.3. For many, "student IDs made the difference in whether they could vote" because students are less likely to possess alternative qualifying forms of ID. Op.4-5. The election supervisor for Monroe County—which houses Indiana University-Bloomington—estimated that two-thirds of voters at the on-campus polling place used their student IDs to vote in the November 2024 election. Op.4.

In 2025, Indiana enacted Senate Bill 10, which amended the voter ID law to exclude "document[s] issued by an educational institution," even documents that met the law's other, neutral criteria. Op.6. The Student ID Ban "marked the first time that Indiana singled out a previously acceptable form of ID and barred its use at the polls." Op.6. Plaintiffs brought this suit within weeks, Op.14, alleging the Ban violates the First and Fourteenth Amendments by burdening voting rights and the Twenty-Sixth Amendment by discriminating against young voters. Op.8.

---

[1] This Background cites to factual findings in the district court's order ("Op."), which this Court reviews for clear error. *Estrada-Martinez v. Lynch*, 809 F.3d 886, 895 (7th Cir. 2015).

After the district court denied Movants' motion to dismiss, the parties engaged in extensive discovery. Op.8.

Plaintiffs then moved for a preliminary injunction, which the district court granted in a fact-intensive order. The court held Plaintiffs were likely to succeed on their undue-burden claim, concluding that the Ban imposes at least a "moderate burden" on students and young voters. Op.27. It found that students are more likely to possess and rely on student ID to vote; students are less likely to possess alternative ID; at least 40,000 Indiana students lack an alternative ID; it is difficult for many students to obtain alternative ID; students are less able to rely on "safety valves" to mitigate the burden; and the Ban singles out students for "selective treatment." Op.18-27. The court also found Movants' justifications for the Ban wanting. Op.27-31. Movants introduced "little evidence demonstrating" that the Ban would have *any* impact on public confidence in elections, Op.28-29, and the court found that the Ban undermines Indiana's interest in "orderly election administration" because it "creates an exception for a single form of voter ID that otherwise meets the law's neutral requirements." Op.29-30. The court similarly noted that "[Movants] provide[d] no evidence that student IDs have ever caused confusion or otherwise complicated election administration." Op.30. The court also found that Plaintiffs' motion was timely filed, and determined that an injunction would not disrupt any ongoing election because "[t]he requested relief only requires [Movants] to accept student IDs as a form of voter identification—something Indiana has already done for nearly two decades," and would require only minimal changes to poll worker training and instruction. Op.11-14.

After finding that the remaining preliminary injunction factors supported relief, the court enjoined the Ban's enforcement. Movants' Ex. R at 1. Movants appealed and now ask this Court to stay the district court's order.

3

## ARGUMENT

The motion should be denied because Movants flouted Rule 8 by failing to seek relief first in the district court. They also fail to carry their burden of establishing the elements necessary for a stay. A stay pending appeal is an "extraordinary" remedy which requires a "demanding" showing. *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1055 (7th Cir. 2025) (citations omitted). Movants must demonstrate that: (1) they have made a strong showing of likelihood of success on the merits; (2) they will be irreparably harmed absent a stay; (3) a stay will not substantially injure other parties; and (4) the public interest favors a stay. *Id.*; *see also Nken v. Holder*, 556 U.S. 418, 426 (2009). A showing of irreparable harm is a "necessary condition" for obtaining a stay, and a movant's failure to make that showing alone warrants denying relief. *Graphic Commc'ns Union v. Chi. Trib. Co.*, 779 F.2d 13, 15-16 (7th Cir. 1985). On the underlying merits of the appeal, this Court reviews the grant of a preliminary injunction for abuse of discretion, its factual findings for clear error, and its legal conclusions *de novo*. *Proft v. Raoul*, 944 F.3d 686, 693 (7th Cir. 2019). Movants fall far short of these standards.

## I.      Movants do not adequately excuse their failure to seek relief in the district court.

The Court can and should deny the motion at the threshold because Movants did not comply with Federal Rule of Appellate Procedure 8(a): they failed to first seek a stay from the district court, as Rule 8 requires, and now offer no good reason why doing so was "impracticable."

Movants half-heartedly argue it would have been "impracticable" for them to seek relief in the district court because that court already ruled against them. Mot.18-19. But this cannot satisfy Rule 8(a), because *every* "party who seeks a stay… is the subject of an adverse decision by the district court." *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, No. 17-6151, 2017 WL 11920191, at *2 (6th Cir. Dec. 8, 2017). Thus, accepting Movants' argument "would nullify [Rule 8's]

requirement." *Id*. Movants also suggest that they sought relief in this Court because "time is of the essence," Mot.19, but they do not explain why the district court could not have ruled quickly on their Motion. Further, as explained below, Movants identify no concrete harm they will suffer if the injunction remains in place—they have already implemented the injunction and students are already relying on it to vote. *Infra* § II. While Movants may *prefer* an expedited resolution from this Court, "[p]reference and impracticability are not synonyms." *Whole Woman's Health v. Paxton*, 972 F.3d 649, 654 (5th Cir. 2020) (denying stay due to unexcused failure to move first in the district court).

Movants' violation of Rule 8 is particularly egregious because their motion invokes a declaration from Indiana's Deputy Secretary of State regarding the purported impact of the injunction on election administration—new extra-record evidence that was never presented to the district court. *See* Movants' Ex. S. "The district court is the proper forum for presentation, testing and confrontation" of evidence, and the "fundamentally different roles of appellate and trial courts mandate consideration of the new evidence by the district court" before this Court "consider[s] any relief pending appeal." *Chem. Weapons Working Grp. (CWWG) v. Dep't of the Army*, 101 F.3d 1360, 1362 (10th Cir. 1996). Movants' noncompliance with Rule 8 therefore warrants denial of their motion. *See Whole Woman's Health*, 972 F.3d at 654; *Gazzola v. Hochul*, No. 22-3068, 2022 WL 18401354, at *1 (2d Cir. Dec. 21, 2022).

## II.    The injunction was consistent with *Purcell*.

Movants' lead argument—that the injunction was improper under *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)—falls flat. The district court correctly rejected Movants' concerns in concluding that *Purcell* does not bar relief. Op.14.

*Purcell* does not dissolve a court's equitable authority to issue an injunction merely due to the proximity of an election. *See, e.g.*, *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring) (rejecting proposition that *Purcell* is an "absolute" bar on injunctive relief); *Kim v. Hanlon*, 99 F.4th 140, 160 (3d Cir. 2024) ("*Purcell* is a consideration, not a prohibition."). Instead, *Purcell* requires a case-specific inquiry into whether an injunction will "result in voter confusion and consequent incentive to remain away from the polls." 549 U.S. at 4-5. Central to this analysis is the level of disruption that the injunction would cause. *See Merrill*, 142 S. Ct. at 881 n.1 (Kavanaugh, J., concurring) ("How close to an election is too close may depend in part on… how easily the State could make the change without undue collateral effects."); *Am. Council of Blind of Ind. v. Ind. Election Comm'n*, No. 1:20-CV-03118-JMS-MJD, 2022 WL 702257, at *6 (S.D. Ind. Mar. 9, 2022) (holding *Purcell* did not bar relief that would not require significant expenditure, would be feasible to implement, and was unlikely to cause voter confusion).

Movants cite cases staying injunctions under *Purcell*, but do not show those cases are comparable to this one. *See* Mot.6. And as the district court correctly determined, under the facts of *this* case, "the primary concerns underlying the *Purcell* principle—confusion and disruption— are largely absent[.]" Op.13. Movants contend that the need to revise guidance materials will cause confusion and disruption, Mot.7—but the only relevant change that Indiana made to implement the Ban was to add a *single* sentence to its Election Administrator's Manual stating that "document[s] used by an educational institution" can no longer "serve as photo ID for purposes of voting." Op.13. Other materials likewise address the Ban in barely a sentence. Op.13. The district court also had evidence from the Director of Elections for Marion County—Indiana's largest county—confirming the injunction could be implemented. He stated that if "student IDs were once again allowed to be used in Indiana, [the Marion County Election Board] could and would

reincorporate the portions of those materials that discussed student IDs into its training and Election Day operations for forthcoming elections." Ex. B ¶ 6.

There is no basis for this Court to second-guess the district court's fact-bound determination that the injunction could be easily implemented. Indeed, *it already has been implemented* (and easily). The day after the injunction was issued, the Indiana Election Division instructed all county clerks across the state that qualifying student identifications "may be used for voting in upcoming elections, including the May 5, 2026, primary election." Ex. A. The Election Division even provided a flyer identifying examples of eligible and ineligible student ID cards. Ex. C. Mr. Montagne has already voted using his student ID, and many other students have likely done so as well. *See* Movants' Ex. B.

These facts also belie Movants' contention that confusion may result if different counties adhere to different rules because, they say, the injunction enjoins only state election officials and one county board. Mot.7. Not only does the injunction apply on its face to Movants and "any other persons who act in concert with the parties or their agents, servants, employees, and attorneys," Movants' Ex. R, but Movants' own communications make crystal clear that they understand the injunction to apply to all counties. The only "confusion" evidence Movants offer is a single sentence in their extra-record declaration stating that unnamed election administrators have "expressed confusion and discomfort at the unsettled state of the law and voter identification process." Movants' Ex. S ¶ 9. Even if this Court could consider that evidence, such a bald assertion cannot conceivably justify discarding the district court's careful fact determinations. *United States v. Acox*, 595 F.3d 729, 731 (7th Cir. 2010) (this Court "is limited to the record built in the district court, so arguments that depend on extra-record information have no prospect of success.").

Moreover, *Purcell* itself undermines Movants' arguments. There, the district court *denied* preliminary relief, but the court of appeals enjoined enforcement of the relevant provision with "no explanation or justification." 549 U.S. at 3. In vacating that order, the Supreme Court held it was "necessary, as a procedural matter, for the Court of Appeals to give deference to the discretion of the District Court." *Id.* at 5. Here, the district court explained *precisely* why its injunction would not result in "voter confusion and consequent incentive to remain away from the polls." *Id.* at 4-5. Just as in *Purcell*, that determination is entitled to deference. Nor is it even conceivable that the injunction here could cause any voter to stay away from the polls. If any voter expected to comply with the Ban, one cannot "imagine that it will pose any difficulty *not* to have to comply with it," thus the injunction "poses no conflict with the sort of expectations that concerned the court in *Purcell*." *Common Cause R.I. v. Gorbea*, 970 F.3d 11, 17 (1st Cir. 2020) (emphasis added).

Finally, it bears emphasis that Movants caused many of the scheduling issues they now lament. Plaintiffs filed this suit just weeks after SB 10 became law, Op.14, and developed an extensive factual record. Movants agreed to both the broader case management plan governing this matter and the specific briefing schedule on Plaintiffs' preliminary injunction motion. *See* Exs. D, E. Movants repeatedly rejected Plaintiffs' proposals for expedited schedules in favor of longer timelines that Movants themselves proposed. *See* Exs. F, G, H. All the while, Movants never once raised the specter that a preliminary injunction would come too late to be implemented in time for the primary—despite being on notice that Plaintiffs intended to seek preliminary relief in advance of that election. Ex. D at 6-7. Having agreed to this timeline, Movants cannot find refuge in *Purcell*. *See Rose v. Raffensberger*, 143 S. Ct. 58, 59 (2022) (mem.) (vacating stay entered under *Purcell* "in light of [the State's] representations to the district court that the schedule on which the district court proceeded was sufficient to enable effectual relief"); *Jack. Branch of NAACP v. City of*

8

*Jacksonville*, No. 22-13544, 2022 WL 16754389, at \*2 (11th Cir. Nov. 7, 2022) (per curiam) (holding *Purcell* did not apply where schedule "was developed with [local authorities], working backwards from the date they provided, and the final schedule was accepted 'without caveat'").

**III.    Movants fail to demonstrate a strong likelihood of success on the merits.**

The district court's 34-page opinion holding that Plaintiffs are likely to succeed on their First and Fourteenth Amendment claim was careful and considered, and rested on detailed findings of fact and conclusions of law. Based on the record before it, the court concluded that the Ban imposes a significant burden on tens of thousands of student voters and that the state's purported interests in the Ban could not overcome that burden. Op.18-27; *see also Burdick v. Takushi*, 504 U.S. 428, 429 (1992) (a court must weigh the "character and magnitude" of any burden imposed on voting against the "precise interests put forward by the State" to justify that burden).

Movants dispute many of the district court's factual findings, but they never argue that the district court *clearly erred* in making those findings. *See DM Trans, LLC v. Scott*, 38 F.4th 608, 618 (7th Cir. 2022) ("Where an appellant's argument for reversing a district court's ruling on a preliminary injunction motion concerns a factual finding, the appellant must meet the demanding clear-error standard."). Because Movants' brief "contains no discussion of the standard of review," much less an application of that standard to their specific arguments, they have waived any right to dispute the district court's factual findings. *See Cole v. Comm'r*, 637 F.3d 767, 772-73 (7th Cir. 2011). And, under the applicable standard, Movants cannot demonstrate a strong likelihood of success on the merits necessary to justify a stay. *See Graphic Commc'ns Union*, 779 F.2d at 15 ("Being likely to prevail is a necessary… condition for obtaining a stay[.]").

**A.    The Ban imposes a significant burden on the right to vote.**

As the district court took pains to explain, this case is not *Crawford*. In *Crawford v. Marion County Election Board*, a divided Supreme Court affirmed the original version of Indiana's voter ID law—which set out neutral criteria for forms of identification, and permitted the use of student ID cards from Indiana public universities that met those criteria. *See* 553 U.S. 181, 191 (2008).[2]

The district court identified numerous material ways in which the Ban differs from the law at issue in *Crawford*. *First*, Plaintiffs showed that the effects of the Ban "fall more heavily" on a particular sub-population, namely tens of thousands of students who lack another qualifying form of ID. Op.18 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 793 n.15 (1983)); *compare Crawford*, 553 U.S. at 202 & n.20 (finding the plaintiffs presented no evidence the statute burdened any particular "class of voters").[3] *Second*, Plaintiffs showed that the affected population would face significant burdens in obtaining an alternative ID, including obtaining the extensive documentation required to apply for an Indiana driver's license and the logistical complications of reaching Bureau of Motor Vehicle locations. Op.21-24. These conditions are more likely to afflict students, who often live on campus and lack access to proof-of-residency documents. Op.23; *compare Crawford*, 553 U.S. at 201 (noting the plaintiffs failed to "provide any concrete evidence of the

---

[2] Movants suggest that other courts have interpreted *Crawford* to hold that excluding student IDs does not significantly burden the right to vote as a matter of law. Mot.9. The cases do not say that. *BABE VOTE v. McGrane*, 546 P.3d 694 (Idaho 2024) (discussing state-law claims, not *Anderson-Burdick* claims); *March for Our Lives Idaho v. McGrane*, 749 F.Supp.3d 1128, 1147-49 (D. Idaho 2024) (fact-bound ruling); *Nash. Student Org. Comm. v. Hargett*, 155 F.Supp.3d 749, 750-51 (M.D. Tenn. 2015) (no discussion of any ban on student IDs in particular).

[3] Movants argue that the Ban does not affect *all* students, and does not *exclusively* affect students, because some students lack qualifying student IDs and some non-students possess university-issued IDs. Mot.10. This is irrelevant—it is undisputable that the Ban's impacts "fall more heavily" on students, and thereby young voters. *Anderson*, 460 U.S. at 93 n.15.

burden imposed on voters who currently lack photo identification").[4] *Third*, Plaintiffs demonstrated the Ban's "selective treatment of student IDs" by showing it targets *only* student IDs, as opposed to other forms of ID that satisfy the law's neutral criteria. Op.25-26; *compare Crawford*, 553 U.S. at 185, 203 (challenged voter ID law was "neutral" and encompassed multiple forms of photo ID).[5] *Fourth*, Plaintiffs showed that members of the affected student population are unable to "rely on the safety valves designed for voters who lack identification," like absentee voting and provisional ballots. Op.26; *compare Crawford*, 553 U.S. at 201 (relying on evidence of such safety valves).

Movants barely address these factual findings, which belie their claim that "*Crawford* controls here." Mot.9. Instead, they suggest the district court committed legal error in determining that the law imposed a moderate burden on a large subgroup of Indiana students. Mot.10-11. That argument is difficult to follow—their brief discusses (1) the difference between facial and as-applied challenges, (2) Justice Scalia's concurrence in *Crawford*, which discouraged consideration of "individual impacts" in assessing burden, and (3) inapt portions of the *Crawford* factual record, without explaining how these concepts relate to the *Anderson-Burdick* framework. But what is clear is that Movants believe the district court was required not only to show that the Ban will affect a large number of students, but that each student will individually face the same "transportation, financial, or scheduling difficulties" in voting or obtaining an alternative form of

---

[4] The district court used Mr. Montagne as an exemplar of the affected student population, stressing that he lacks an Indiana driver's license and access to the documents he would need to obtain one. Op.22-23. Movants contend that it would not be impossible for Mr. Montagne to assemble the necessary documents and trek to the Bureau of Motor Vehicles to apply for a license. Mot.12-13. This misses the point: *Anderson-Burdick* asks if a restriction *burdens* the right to vote, not if those burdens are physically impossible to overcome.

[5] Movants suggest that "legislative intent" has no "relevance under *Anderson-Burdick*." Mot.13. They are wrong: *Anderson* itself says that restrictions that "fall more heavily" on a particular "segment of the community" warrant closer scrutiny. *Anderson*, 460 U.S. at 793 n.15.

ID. Mot.11-12. That is not the law. This is not a damages class action; the district court was not obliged to determine that the Ban affected all students equally. Instead, the *Anderson-Burdick* test is "flexible," requiring a "fact-intensive" analysis to approximate the "character and magnitude" of the burden imposed on the affected population. *Gill v. Scholz*, 962 F.3d 360, 365-66 (7th Cir. 2020). That is precisely what the district court did.

> **B.      The district court did not clearly err in rejecting Movants' putative state interests.**

The district court also correctly rejected Movants' purported state interests. Movants first argue that the Ban improves "election administration" by "eliminat[ing] a source of complexity and potential error" that stems from variances in public university IDs. Mot.13-14. But the district court explained why this *cannot* justify the ban: "[Movants] provide no evidence that student IDs have ever caused confusion or otherwise complicated election administration." Op.30. Besides, any variance among student IDs is "equally applicable to other forms of ID that the law still permits, including Veteran's Administration, military, and tribal ID cards, many of which are less uniform than student IDs." Op.30. In fact, the Ban threatens to *reduce* uniform application of the law by "creat[ing] an exception for a single form of voter ID that otherwise meets the law's neutral requirements." Op.30.

Movants also argue that the Ban improves "public confidence" in election integrity because voter ID laws are popular and reduce public perceptions of fraud. Mot.14-15. But they presented *no* evidence suggesting that the Ban is "necessary to further" these interests. Op.28-29. Movants' generic references to the popularity of voter ID laws bear no relation to "eliminat[ing] student IDs" *in particular* "as a valid form of photo identification." Op.29. And while Movants now argue that the Ban helps "deter[] fraud," Mot.13, they did not even raise a fraud argument to the district court

or cite a shred of evidence that student IDs have ever been used to commit voter fraud. *See* Op.28 ("[Movants] do not invoke [actual voter fraud] to justify SB 10").

### C.     The scope of the district court's injunction was proper.

Movants also challenge the scope of the district court's injunction, citing *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), to argue that the injunction should be limited to the named individual plaintiff, Josh Montagne. But Count US IN and Women4Change also suffered injuries that can only be redressed by enjoining the Student ID Ban in its entirety.[6]

An organization suffers a cognizable injury when an action "perceptibly impair[s]" its core services and activities. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). This Court has applied that rule to voter-assistance organizations, finding standing where voting restrictions impeded their voter-registration, education, or election-day assistance efforts. *Common Cause Ind. v. Lawson*, 937 F.3d 944, 950 (7th Cir. 2019). These impediments need not be severe: "organizational standing… 'requires only a minimal showing of injury.'" *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007).

Count US IN and Women4Change are both nonprofits that register voters, educate students about voting, and provide election-day assistance, with a focus on young voters and students. Ex. I ¶¶ 3-5; Ex. J ¶¶ 3-4. Because of the Ban, carrying out their core activities now requires spending additional time and resources educating students, helping them obtain qualifying ID, revising educational materials, retraining volunteers, and assisting turned-away voters on election day. Ex. I ¶¶ 8-13; Ex. J ¶¶ 12-14. This makes their work less effective, since the Ban will discourage many

---

[6] This Court can affirm the district court "on any ground supported by the record." *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001).

students from registering and voting, and at least some students these organizations have already registered will be unable to cast their ballots. Ex. I ¶¶ 8-13; Ex. J ¶¶ 13-14.

Women4Change also has associational standing. *UAW v. Brock*, 477 U.S. 274, 282 (1986). It has approximately 10,000 members, including registered Indiana voters who are students at public colleges and universities. Ex. J ¶¶ 5-9. These members have standing to challenge the Ban since, as one student member attests in her declaration, it removes student ID as a way to satisfy the voter ID law. *See* Ex. K ¶¶ 5-7; *Gray v. Sanders*, 372 U.S. 368, 375 (1963); *One Wis. Inst., Inc. v. Nichol*, 186 F.Supp.3d 958, 965-66 (W.D. Wis. 2016). Promoting student voting is central to Women4Change's mission, Ex. J ¶ 4, and it seeks only equitable relief, so individual participation is unnecessary. *United Food & Com. Workers v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996).

As this Court has recognized, "an injunction requiring the defendant to cease the offending activity entirely may be the only way to provide complete relief to the plaintiff." *Reps. Comm. for Freedom of the Press v. Rokita*, 147 F.4th 720, 733 (7th Cir. 2025). That is the case here. The only way to remedy the harm to Plaintiffs is to enjoin the Ban entirely. *See League of United Latin Am. Citizens v. Exec. Off. of President*, 808 F.Supp.3d 29, 85 (D.D.C. 2025). Anything short of statewide relief would fail to redress the injuries to Women4Change's thousands of members and would be impractical. *See id.* Critically, Movants do not contend that the organizational plaintiffs lack standing, nor do they dispute that the injunction was necessary to afford those plaintiffs complete relief. They have therefore failed to make a "strong showing" that they are likely to prevail on this issue. *Nken*, 556 U.S. at 426.

**IV.    Movants suffer no cognizable injury, much less an irreparable one, from the district court's injunction.**

Movants' motion must be further denied because Movants will not be irreparably injured absent a stay. As this Court has made clear, "there can be no irreparable harm" to a government entity "when it is prevented from enforcing an unconstitutional statute." *Joelner v. Village of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004). Because the Ban is unconstitutional, Movants will suffer no irreparable harm due to their inability to enforce it. *Contra* Mot.17.

Nor do Movants' other purported injuries justify a stay. Movants contend the injunction will cause "confusion for voters, the public, and election workers and officials" and result in the "loss of an orderly election process." Mot.16-17. But the district court has already determined that the risk of "confusion and disruption" is "largely absent here," Op.13, and the changes required by the injunction are so straightforward that they have already been implemented, *supra* § II; Mot.17. These facts vindicate the district court's conclusion that an injunction will not risk confusion or disrupt the election.

**V.    The remaining equitable factors favor preserving the district court's injunction.**

The final two factors—injury to Plaintiffs and the public interest—also favor Plaintiffs. All Plaintiffs will be "substantially injure[d]" by a stay. *Castañon-Nava*, 161 F.4th at 1055. Mr. Montagne will be irreparably injured because his fundamental right to vote will be infringed. *See, e.g.*, *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("When constitutional rights are threatened or impaired, irreparable injury is presumed. … A restriction on the fundamental right to vote therefore constitutes irreparable injury."). Movants argue that Mr. Montagne has already voted in the primary, Mot.17-18, but there is no guarantee that this litigation will be finally resolved prior to the general election—indeed, the district court specifically noted that absent an injunction, Mr. Montagne would also be unable to vote in the general election. Op.32.

15

Women4Change will also be irreparably harmed: absent an injunction, its members will lose the ability to use a form of ID they already possess to satisfy the voter ID law, burdening their right to vote. And both Count US IN and Women4Change will suffer irreparable injury because the Ban harms their ability to carry out their core missions of helping students successfully vote. *See Ind. State Conf. of the NAACP v. Lawson*, 326 F.Supp.3d 646, 662 (S.D. Ind. 2018) (finding irreparable harm existed where restriction "limit[ed] [plaintiff] organization[s'] ability to" assist voters and carry out their missions), *aff'd sub nom. Common Cause Ind. v. Lawson*, 937 F.3d 944 (7th Cir. 2019). Movants insist these harms are irrelevant because the district court did not find those Plaintiffs had standing—but they do have standing, *supra* § III.C, and *Movants offer no argument otherwise*.

The injunction also advances the strong public interest in "exercising the 'fundamental political right' to vote," *Purcell*, 549 U.S. at 4 (citation omitted), and in "permitting as many qualified voters to vote as possible," *Obama for Am.*, 697 F.3d at 437. The district court's injunction ensures that many thousands of Indiana voters are able to continue exercising their fundamental right to vote using their student IDs as they have for the past two decades.

Last, Movants' contention that Plaintiffs' supposed delay in requesting an injunction affects the balance of harms is entirely baseless. Mot.18. Movants agreed to the case schedule and the preliminary injunction briefing schedule, rejected Plaintiffs' more expedited proposals, and never once raised the possibility that an injunction would come too late. *Supra* § II.

## CONCLUSION

The motion for a stay pending appeal should be denied.

Dated: April 17, 2026

Respectfully submitted,

Jeffrey A. Macey
Macey Swanson LLP
429 N. Pennsylvania Street
Ste 204
Indianapolis, IN 46204
jmacey@maceylaw.com
(317) 637-2345

*/s/ Aria C. Branch*
Aria C. Branch
   *Counsel of Record*
Katie Chamblee-Ryan
Max C. Accardi
Derek A. Zeigler
ELIAS LAW GROUP LLP
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
(202) 968-4490
abranch@elias.law
kchambleeryan@elias.law
maccardi@elias.law
dzeigler@elias.law

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 27**

1.      This response complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because, according to the word count function of Microsoft Office Word 365, this response contains 5,199 words, excluding the parts of the brief exempted by Fed. R. App. P. 27(d)(2).

2.      This response complies with the typeface requirements of Fed. R. App. P. 27(d)(1), Fed. R. App. P. 32(a)(5), and Circuit Rule 32, and the type style requirements of Fed. R. App. P. 32(a)(6) because this response has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 12 point Times New Roman for the main text and footnotes.

Dated: April 17, 2026

*/s/ Aria C. Branch*
Aria C. Branch

18

## CERTIFICATE OF SERVICE

I, Aria C. Branch, an attorney, hereby certify that on April 17, 2026, I caused the above response to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the Court's CM/ECF system.

*/s/ Aria C. Branch*
Aria C. Branch
