No. 26-1783

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

COUNT US IN, et al.,

*Plaintiffs-Appellees,*

v.

DIEGO MORALES, in his official capacity as the
Secretary of State of the State of Indiana, et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court for the
Southern District of Indiana, No. 1: 25-cv-00864-RLY-MKK
The Honorable Richard L. Young, Judge

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR
IMMEDIATE ADMINISTRATIVE STAY OF
PRELIMINARY INJUNCTION AND STAY PENDING APPEAL**

ANDREW NUSSBAUM
CHRISTOPHER O. MURRAY

First & Fourteenth PLLC
2 N. Cascade Avenue, Suite 1430
Colorado Springs, CO 80903
(719) 286-2475
andrew@first-fourteenth.com
chris@first-fourteenth.com

JAMES COMPTON

First & Fourteenth PLLC
800 Connecticut Avenue, Suite 300
Washington, D.C. 20006
(202) 998-1978
james@first-fourteenth.com

THEODORE E. ROKITA
Attorney General of Indiana

JAMES A. BARTA
Solicitor General

KYLE HUNTER
Deputy Attorney General

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

*Counsel for State Defendants-Appellants*

## ARGUMENT

Some election issues are complicated. Whether this Court should stay a preliminary injunction issued a week after early voting in a primary has begun is not. "[W]hen a lower court intervenes and alters the election rules so close to the election date," this Court's and the Supreme Court's precedents indicate that an appellate court "should correct that error." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 425 (2020). Plaintiffs' argument that Appellate Rule 8 precludes an emergency stay defies its text and common sense. Any further delay in obtaining relief would only lead to further disruption of an election *already in progress*.

Although this Court need not look past *Purcell*, the traditional stay factors strongly support a stay. Plaintiffs argue at length that SB 10 is unconstitutional under *Anderson-Burdick*. At this stage, however, the question is not who is correct on the merits. It is whether Indiana has a likelihood of success. The fact that the district court's decision parts ways with the decisions of multiple other courts demonstrates that likelihood exists. Notably, moreover, plaintiffs do not dispute that the district court ignored *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), in granting a universal injunction. They merely suggest the injunction could be affirmed on a theory that the district court did not adopt. And their theory disregards yet other precedent.

Finally, the equities and public interest strongly favor a stay. No one disputes that the only plaintiff found to have standing has already voted in the primary—which means plaintiffs would not be prejudiced by a stay. By contrast, leaving an injunction against a duly enacted law intact will continue irreparably harming the

State by disrupting an ongoing election, causing confusion, and leading to uneven application of voting rules across the State. A stay is urgently needed.

## I.    Appellate Rule 8 Does Not Require Further Delay

Plaintiffs argue that Indiana was required to seek a stay from the district court. Resp. 4-5. But Appellate Rule 8 excuses a party from seeking a stay from the district court when doing so would be "impracticable," such as in time-sensitive cases. Fed. R. App. P. 8(a)(2)(A)(i); *see, e.g.*, *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*, 996 F.3d 37, 44 (1st Cir. 2021) (finding impracticability due to "tight timeframe"); *Commonwealth v. Beshear*, 981 F.3d 505, 508 (6th Cir. 2020) (finding impracticability where activity would occur in a few days). Plainly, this is a time sensitive case. An election is underway and will be completed on May 5. Tellingly, plaintiffs cite no case about injunctions issued on the eve of elections.

A declaration from the Secretary of State's Office confirms the urgency, explaining officials and administrators have expressed "confusion and discomfort." State Ex. S at ¶ 9. Nothing in Rule 8 precludes consideration of that declaration, *contra* Resp. 5; it authorizes parties to attach "affidavits," Fed. R. App. P. 8(a)(2)(B)(ii). And as explained further below, plaintiffs are wrong that there is "no concrete harm" to the State. Resp. 5. Quite apart from the "irreparabl[e]" harm to sovereign interests, *Abbott v. Perez*, 585 U.S. 579, 602 & n.17 (2018), the injunction is disruptive. Plaintiffs are simply wrong the injunction is water under the bridge.

## II.    *Purcell* **Requires an Immediate Stay**

A bedrock election law principle is that federal courts should "not alter the election rules on the eve of an election"—much less while the election is underway. *Abbott v. League of United Latin Am. Citizens*, 146 S. Ct. 418, 419 (2025) (quoting *Republican Nat'l Comm.*, 589 U.S. at 424 (per curiam)); *see* Mot. 5-7. Plaintiffs' attempts to avoid *Purcell* fall flat.

Plaintiffs echo the district court's observation that *Purcell* is about disruptive effect, not timing. Resp. 6. That is wrong. The Supreme Court and this Court regularly stay late-breaking injunctions without any stated reason except the injunction's lateness—or indeed any reason at all. *See, e.g.*, *Robinson v. Callais*, 144 S. Ct. 1171 (2024) (staying injunction issued 189 days before election); *Merrill v. Milligan*, 142 S. Ct. 879 (2022) (staying injunction issued two months before election); *Democratic Nat'l Comm. v. Bostelmann*, 977 F.3d 639, 642 (7th Cir. 2020) (reversing injunction issued six weeks before election). That practice reflects both that timing is a near-perfect proxy for disruptiveness and that *Purcell* seeks to protect a broader public interest in clear and settled rules. *See Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006).

Any argument that the injunction is somehow harmless ignores the record. Election officials and administrators have already expressed "confusion and discomfort" about the injunction. State Ex. S at ¶ 9. That is no surprise. The State trained election officials on SB 10 in December 2025 and distributed election manuals in guidebooks in March 2026. State Ex. S at ¶ 6. Now, midway through a primary elec-

3

tion, rules have changed. Doctrine and experience both confirm that this "'last-minute'" change undermines "voter understanding and confidence" and sow "election administrator, poll worker, and voter confusion." State Ex. K at ¶¶ 7-9.

Plaintiffs argue there can be no confusion or disruption because the injunction applies statewide and has already been implemented statewide. Resp. 6-7. That is doubly wrong. First, the injunction prohibits defendants and their agents from enforcing SB 10. State Ex. R. But plaintiffs sued no local officials other than Monroe County, even though Indiana law charges local officials—not state officials—with enforcing voter-identification requirements. Ind. Code §§ 3-10-1-7.2(a), 3-11-8-25.1. Nothing prohibits local officials in Indiana's 91 counties from independently deciding they must enforce SB 10's requirements. And if plaintiffs disagree, that is just more reason to grant a stay to mitigate confusion and address the obvious jurisdictional problem with enjoining nonparties who were never served with process.

Second, plaintiffs cite no evidence that all 92 counties have implemented the injunction or would continue doing so should a stay be granted. What they cite is evidence that Monroe County has adhered to the injunction and an email from the Election Division stating university IDs "may be used for voting in upcoming elections, including the May 5, 2026, primary." Resp. 7 (citation omitted). But local officials need not adhere to that email, which is "advisory only." *Ind. Democratic Party v. Rokita,* 458 F. Supp. 2d 775, 785 (S.D. Ind. 2006), *aff'd sub nom. Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008). And the "confusion and discomfort" local officials have expressed is powerful evidence they

4

may not follow the email (which does not speak for all state defendants in this case). State Ex. S at ¶ 9. What is more, early voting is only available at "certain" polling locations—not the full array of locations that will be open on primary day. State Ex. U. Any "implementation" is far from complete.

Nor are plaintiffs correct that the State is somehow to blame for the timing. Resp. 8-9. Plaintiffs cannot "point to any 'last-minute event' that justified a 'last-minute reaction.'" *Common Cause Ind. v. Lawson*, 978 F.3d 1036, 1043 (7th Cir. 2020). Indiana enacted SB 10 in April 2025, and plaintiffs filed suit in May 2025, which meant that plaintiffs could have sought relief nearly a year ago. Yet plaintiffs waited until February 6, 2026, to seek relief. Any delay is entirely of their own making. It is equally implausible to suggest that the State's agreement to dates in a case-management plan or briefing schedule, *see* Resp. 8, precludes a stay. The State agreed to dates—nothing more. It did not agree a last-minute injunction would be proper. Plaintiffs could have moved for a preliminary injunction earlier or pressed for a tighter schedule if they had concerns about scheduling. They did neither.

## III.   Indiana Has a Strong Likelihood of Success

Even apart from *Purcell,* a stay is warranted. Plaintiffs emphasize that the district court ruled in their favor. But the question is not whether the district court was right. The question is whether Indiana is likely to succeed on the merits. It is.

### A.   As several decisions upholding similar laws show, there are strong arguments that SB 10 is constitutional

To see that Indiana's arguments are strong, the Court need look no further than the decisions upholding similar laws. *BABE VOTE v. McGrane*, 546 P.3d 694,

713 (Idaho 2024), held that Idaho could end use of "student identification" for voting. *Nashville Student Organizing Committee v. Hargett*, 155 F. Supp. 3d 749, 751, 754-55 (M.D. Tenn. 2015), rejected a challenge to a Tennessee law providing that "identification cards issued to a student by an institution of higher education" could not be used for voting. And *March for Our Lives Idaho v. McGrane*, 749 F. Supp. 3d 1128, 1147 (D. Idaho 2024), held that a law excluding university IDs "is a non-severe burden triggering less exacting review." *Id.* (cleaned up). At a minimum, those decisions are evidence that Indiana has a strong likelihood of success.

Although timing constraints preclude a fuller response on the merits, a few additional points are in order. First, plaintiffs continue to glance past *Crawford*'s key point: "The burden of acquiring, possessing, and showing a free photo identification is simply not severe, because it does not even represent a significant increase over the usual burdens of voting." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 209 (2008) (Scalia, J., concurring) (citation omitted); *see id.* at 198 (opinion of Stevens, J.) ("For most voters who need them, the inconvenience of making a trip to the BMV, gathering the required documents, and posing for a photograph surely does not qualify as a substantial burden on the right to vote, or even represent a significant increase over the usual burdens of voting."). And what is true of most voters is true of most people with IDs from public universities—the vast majority, including three-quarters of students, find it easy enough to obtain driver's licenses. *See* Mot. 10-11.

Second, even for students without driver's licenses yet, plaintiffs do not cite evidence showing that most of them would be unable to obtain licenses. *See* Mot. 12-

13. Rather, they say it is "more likely" that students could face difficulties with obtaining transportation or documents needed to obtain a license, without quantifying how many students actually face those alleged difficulties or how many could not vote for that reason. Resp. 10. Plaintiffs' invocation of generic difficulties is the same type of argument that the challengers advanced in *Crawford*. Mot. 11-12.

Third, plaintiffs' argument that no evidence shows SB 10 is necessary to achieve state interests, Resp. 12, assumes that a State cannot act until a problem arises. Not so: "[A] State may take action to prevent election fraud" and other issues "without waiting for [them] to occur." *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 686 (2021). There is, moreover, evidence of the State's interests. Mot. 13-15. For example, even the district court admitted SB 10 would streamline election administration. *Id.* at 14. It just thought Indiana should balance efficiency and other interests differently—but that's a judgment reserved to the legislature. *Id.*

## B. The district court erred in granting relief to parties without standing and nonparties

Separately, plaintiffs do not dispute that *CASA* forbids what the district court did here—granting injunctive relief to nonparties and parties it did not find to have standing. Mot. 15-16. Instead, they argue the injunction could be upheld on alternative grounds, contending Count US IN and Women4Change have standing. Resp. 15. Even a quick glance at their arguments reveals serious problems.

Plaintiffs argue they have organizational standing because they will have to expend "additional time and resources" educating and assisting voters. Resp. 13. But *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), squarely rejected the

7

argument that "standing exists when an organization diverts its resources in response to a defendant's actions," holding that medical organizations could not show standing by pointing to increased expenditures of time and effort. *Id.* at 394-95. All the cases plaintiffs cite predate *Alliance* and have been superseded. *See Wis. Voter All. v. Millis*, 166 F.4th 627, 640 (7th Cir. 2026) (Brennan, J., concurring).

Plaintiffs alternatively argue Women4Change has associational standing. Resp. 14. But establishing associational standing requires an organization to "*identify* a member who has standing." *Satanic Temple, Inc. v. Rokita*, 163 F.4th 1061, 1068 (7th Cir. 2026) (emphasis added). Plaintiffs have not done so. The single member to which they point, Resp. 14, could still vote under SB 10 by using her Indiana driver's license or passport, State Ex. T at 14:21-24. Her claimed "injury" amounts to not more than a mere preference to vote using a university-issued ID.

In any event, neither associational nor organizational standing authorizes a court to enjoin a statute's application to everyone. The Supreme Court made clear that "class actions are now the preferred vehicle for obtaining widespread relief." *Chi. Headline Club v. Noem*, 168 F.4th 1033, 1042 (7th Cir. 2026). It would impermissibly end-run *CASA* to issue a universal injunction simply because organizations claim they will have to expend additional funds or unidentified members are harmed.

## IV.    The Equities and Public Interest Favor a Stay

Lastly, the equities and public interest favor a stay. Plaintiffs do not dispute that the only plaintiff found to have standing already voted in the primary and faces no imminent harm. *See* Mot. 17-18. They argue other plaintiffs have standing. Resp.

16. But that is wrong, and their asserted harm—that voter education might be less effective, *see id.* at 13—pales in comparison to harms on the other side.

Plaintiffs' assertion that enjoining an unconstitutional statute inflicts no harm, Resp. 15, assumes what they have yet to prove and ignores that an injunction automatically inflicts irreparable harm, Mot. 16. Besides, in the election context, the Supreme Court has stayed late-breaking injunctions of laws held unconstitutional without considering the merits. *See, e.g.*, *Republican Nat'l Comm.*, 589 U.S. at 425. The State never agreed that such an injunction would be proper.

Assertions that nonparty voters benefit from the injunction, Resp. 16, cannot rescue it, *see Republican Nat'l Comm.*, 589 U.S. at 425-26. Voters had a year after SB 10's enactment to get any IDs needed. The only surprise is the injunction.

## CONCLUSION

The preliminary injunction should be stayed.

Respectfully submitted,

ANDREW NUSSBAUM
CHRISTOPHER O. MURRAY

First & Fourteenth PLLC
2 N. Cascade Avenue, Suite 1430
Colorado Springs, CO 80903
(719) 286-2475
andrew@first-fourteenth.com
chris@first-fourteenth.com

JAMES COMPTON
First & Fourteenth PLLC
800 Connecticut Avenue, Suite 300
Washington, D.C. 20006
(202) 998-1978
james@first-fourteenth.com

THEODORE E. ROKITA
Indiana Attorney General

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

KYLE HUNTER
Deputy Attorney General

Office of the Indiana Attorney General
Indiana Government Center South,
Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-0709
Facsimile: (317) 232-7979
James.Barta@atg.in.gov

*Counsel for State Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(C) because this document contains 2,370 words, excluding the parts exempted by Fed. R. App. P. 27(d)(2) and Fed. R. App. P. 27(a)(2)(B).

2.      This document complies with the typeface requirements of Circuit Rule 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Century Schoolbook 12-point font.


Dated: April 17, 2026                          /s/ James A. Barta
                                               JAMES A. BARTA
                                               Solicitor General

## CERTIFICATE OF SERVICE

I hereby certify that, on April 17, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

Office of the Indiana Attorney General
IGC-South, Fifth Floor
302 W. Washington Street
Indianapolis, Indiana 46204
Telephone: (317) 232-0709
Fax: (317) 232-7979
Email: James.Barta@atg.in.gov